UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMARPREET SINGH,

Petitioner,

v.

TODD LYONS, et al,

Respondents.

CASE NO. 2:26-cv-01176-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Amarpreet Singh's Petition for Writ of Habeas Corpus. Dkt. No. 1. Respondents are Todd Lyons, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, Secretary, United States Department of Homeland Security ("DHS"), Todd Blanche, Acting Attorney General of the United States, and Bruce Scott, Warden, Northwest ICE Processing Center ("NWIPC"). Petitioner, who is presently detained at NWIPC (*id.* ¶ 1), seeks his immediate release (*id.* ¶ 5). Having reviewed the

//

//

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

Petition, Respondents' Return[1] (Dkt. No. 4), Petitioner's Traverse (Dkt. No. 7), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the Petition and ORDERS Petitioner's immediate release.

## I.    BACKGROUND

Petitioner is a 28-year-old citizen and national of India. Dkt. No. 1 ¶ 19. On or about August 11, 2017, United States Customs and Border Protection ("CBP") encountered Petitioner near the southern border. Dkt. No. 5 (Britt Decl.) ¶ 4.[2] CBP officers detained Petitioner under Section 235(b)(1) of the Immigration and Nationality Act ("INA") and placed him into expedited removal proceedings. *Id*.; *see also* Dkt. No. 6-1 (Notice and Order of Expedited Removal) at 2. That same day, Petitioner was transferred to the NWIPC and referred to a United States Citizenship and Immigration Service ("CIS") Asylum Officer ("AO") for a Credible Fear review of Petitioner's claims of fear of removal to India. Dkt. No. 5 ¶ 5. On September 9, 2017, Petitioner was issued a Notice to Appear ("NTA") after the AO determined that Petitioner's fear of return to India was credible. *Id*. ¶ 6. On September 29, 2017, an immigration judge ("IJ") granted Petitioner a $15,000 bond. *Id*. ¶ 7. On October 5, 2017, Petitioner's bond was paid, and he was released. *Id*. ¶ 8. On July 29, 2024, an IJ dismissed Petitioner's removal proceedings without prejudice. *Id*. ¶ 9; *see also* Dkt. No. 6-3 (Form I-213) at 4. On October 1, 2024, the Office of Enforcement and Removal Operations ("ERO") cancelled Petitioner's bond and sent notice of the bond cancellation to the obligor at the address on file with ERO. Dkt. No. 5 ¶ 10.

---

[1] As used in this order, the term "Respondents" does not include Respondent Scott or NWIPC. Respondents Scott and NWIPC have not responded to the habeas petition and have not appeared in this case.

[2] Many of the facts recounted here are based on the declaration of Deportation Officer Harold Britt (who does not claim to have firsthand personal knowledge of most of the facts he reports) or on hearsay contained within narrative portions of documents in Petitioner's immigration record. The Court makes no findings as to whether these are true and correct statement of fact but does note that they appear to be uncontested by the Parties.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 2

On March 25, 2026, deportation officers went to GTS Interior Supply in Rathdrum, Idaho, based on a tip that Petitioner had an active local warrant for allegedly bypassing the "Huetter Port of Entry" in Huetter, Idaho. Dkt. No. 6-3 at 3.[3] While conducting the site visit, the officers noticed a truck with a license plate number that matched the one associated with Petitioner. *Id*. They saw a man, whom they believed resembled photos of Petitioner, get in and out of the truck. *Id*. The officers approached Petitioner, Petitioner identified himself, and the officers "placed [Petitioner] under arrest for immigration violations." *Id*. Next, the officers contacted the Kootenai County Sheriff's Office and confirmed that Petitioner's warrant was still valid, and that the sheriff's office wanted to arrest Petitioner. *Id*. The officers transported Petitioner to Kootenai County Jail, where Petitioner was booked into custody on the warrant. *Id*. However, Petitioner's criminal case was dismissed the following day—March 26, 2025. Dkt. No. 1 at 2. Instead of being released into the community from jail, Petitioner was transported to NWIPC on March 27, 2026. Dkt. No. 5 ¶ 16. On March 30, 2026, ERO issued a new NTA to Petitioner, initiating a new removal case and charging him with inadmissibility under INA Section 212(a)(6)(A)(i). *Id*. ¶ 17.

Petitioner filed the instant habeas petition seeking relief under 28 U.S.C. § 2241 on April 7, 2026. Dkt. No. 1. Petitioner argues that he should be released because Respondents violated his Fifth Amendment right to due process. *Id*. at 9. The matter is ripe for the Court's review.

## II.   LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.

---

[3] In their return memorandum, Respondents describe this violation as "bypassing a weight station." Dkt. No. 4 at 4, 7. Heutter, Idaho, is not on an international border.

2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

### III.   DISCUSSION

**A.   Statutory Basis for Petitioner's Detention**

The Parties dispute whether Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a). *See* Dkt. Nos. 4 at 4, 7 at 7.  This distinction is important because the Supreme Court has held that noncitizens detained pursuant to Section 1225(b)(2) must remain in custody for the duration of removal proceedings, *see Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018), while Section 1226(a) permits release on bond during removal proceedings. Section 1225(b)(1) provides for expedited removal proceedings for certain noncitizens who are "arriving" in the United States as well as others detained within two years of unauthorized entry. *See* 8 U.S.C. § 1225(b)(1). Section 1225(b)(2) applies to any other noncitizen "who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted" and provides for detention during regular removal proceedings." *Id.* § 1225(b)(2)(A). By contrast, Section 1226(a) applies not to noncitizens "arriving" or "seeking admission," but to those arrested for removal proceedings on an administrative warrant. *See Id.* § 1226(a). The Supreme Court has described Section 1226(a) as the "default rule" for noncitizens who were "already present in the United States" before being detained in immigration facilities. *See Jennings*, 583 U.S. at 303 (2018).

Respondents argue that "Petitioner's current detention is governed by the mandatory detention framework of 8 U.S.C. § 1225(b), not the discretionary provisions of 8 U.S.C. § 1226(a)" because he is an applicant for admission under Section 1225(b)(2)(A). Dkt. No. 4 at 4, 5. But this interpretation of Section 1225(b), which ignores key qualifiers such as its application to noncitizens presently "seeking admission" (which Petitioner was not), has been

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 4

staunchly rejected by courts in this District and across the Circuit—as Respondents are well aware. "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Lal v. Noem*, No. C26-247, 2026 WL 369378, at *2 (W.D. Wash. Feb. 10, 2026) (quoting *Aquino v. LaRose*, No. C25-2904, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases)). "The Government's interpretation of § 1225(b) is unpersuasive when the statutory scheme is read as a whole, when this subsection is read in conjunction with its implementing regulations, and when the subsection is read against the backdrop of shifting agency pronouncements." *Id.*[4]

Because Petitioner is not detained under Section 1225, he is not subject to mandatory detention.

**B.     Due Process**

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Fifth Amendment guarantee of due process applies in removal proceedings. *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth

---

[4] Respondents do not argue that the Court should look to Petitioner's previous expedited removal proceedings as evidence that he is subject to Section 1225(b)(1). In any case, the record before the Court clearly shows that Respondents have considered Petitioner to be detainable only under Section 1226, not Section 1225, since at least September 28, 2017, when he was ordered released on bond pursuant to 8 C.F.R. Part 236—the regulation that implements 8 U.S.C § 1226. Dkt. No. 1-3 (Bond Order of the Immigration Judge). "Where a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." *Del Valle Castillo v. Wamsley*, No. C25-2054, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, 795 F. Supp. 3d 271, 281 (D. Mass. 2025)).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 5

Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process."). Here, the Court considers whether the protections provided to Petitioner upon his detention in 2026 were constitutionally adequate.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.").

In *Mathews*, the Supreme Court established a three-part balancing test to determine whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts in this Circuit apply the *Mathews* test to evaluate claims by immigration detainees who have previously been released that their re-detention lacked constitutionally adequate procedural safeguards. *See, e.g.*, *Sarwari v. Wamsley*, No. C26-121, 2026 WL 279968,

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 6

at *3 (W.D. Wash. Feb. 3, 2026); *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

### 1.    The Private Interest Affected by the Official Action

"The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Courts in this District and Circuit have consistently concluded that a noncitizen who has been released from immigration detention has a constitutionally protected liberty interest. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025).

Petitioner argues that the first *Mathews* factor favors him because he has a significant private interest in remaining free from detention. Dkt. No. 1 ¶ 40. Respondents concede that "Petitioner's private interest in liberty is significant," but argues that it is substantially diminished because he is an unadmitted noncitizen who, as part of the removal process, is subject to civil, nonpunitive detention. Dkt. No. 4 at 7. Respondents' assertions do not sway the Court in its *Mathews* analysis. In fact, Petitioner's interest in not being detained is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). This interest was heightened when Petitioner was released on bond. *See Doe v. Becerra*, 787 F. Supp. 3d at 1093. Going further, Petitioner's liberty interest was again heightened when, after allowing Petitioner to live in the community on bond for nearly seven years, Respondents decided to dismiss Petitioner's removal proceedings entirely and cancel his bond, leaving Petitioner with no conditions whatsoever on his full enjoyment of his freedom and participation in community life. Naturally, Petitioner continued to live his life as a free man without any legal restraints for

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 7

another twenty months. Petitioner's circumstances show his significant liberty interest, swaying this factor strongly in his favor.

Therefore, the first *Mathews* factor weighs in Petitioner's favor.

### 2.    Risk of Erroneous Deprivation Through Procedures Used

Petitioner argues that the second *Mathews* factor weighs in his favor. In particular, Petitioner asserts the risk of erroneous deprivation is considerable when someone is detained without advance notice or a hearing because a pre-deprivation hearing "ensure[s] that the purposes of [pre-removal order] detention—the prevention of danger and flight risk—are properly served." Dkt. No. 1 ¶ 40 (citing *Zambrano-Vazquez v. Noem*, No. C26-122, 2026 WL 657129, at *3 (W.D. Wash. Mar. 9, 2026)). Respondents do not dispute that Petitioner was provided no advance notice before immigration officers detained him or the fact that new removal proceedings would be opened against him. However, Respondents argue that the risk of erroneous deprivation is low for several reasons, including: (1) Petitioner was taken into ICE custody after release from criminal custody, and the local arrest supplied independent lawful authority for his initial seizure and subsequent custody; (2) Petitioner received immediate notice of the charges in the new NTA; (3) Petitioner had prompt access to "further" administrative review through an immigration master calendar hearing; and (4) a pre-deprivation hearing "would add little probative value while substantially increasing the likelihood that individuals who pose flight risks or dangers evade the removal process." Dkt. No. 4 at 7–8.

These arguments are unavailing. First, Respondents' argument that Petitioner's local criminal arrest provided independent authority to later detain him in immigration custody makes little sense. Immigration violations, not unrelated criminal law violations or infractions, provide the basis for removal proceedings and corresponding detention—both as a general matter, and on the clear record here. Moreover, by the time an NTA was served on Petitioner and his detention

at NWIPC commenced, the criminal charge against him had already been dismissed. Second, Petitioner did not receive "immediate" notice of the charges in the new NTA, but was in fact served the NTA on March 27, 2026—two days after being detained by immigration officers. *See* Dkt. No. 6-2 at 4. Third, a bond hearing, not a master calendar hearing, is an opportunity to challenge immigration detention, and Petitioner has been provided with none. And under circumstances like Petitioner's, even a post-deprivation bond hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Finally, the suggestion that a pre-deprivation bond hearing would "add little probative value" compared to the process Petitioner received (no hearing at all) is nonsensical.

Courts in this District have routinely held that the Government violates due process when a noncitizen is released on their own recognizance and re-detained without a pre-deprivation hearing, *see Abraham v. Noem*, No. C26-823, 2026 WL 904677, at *4 (W.D. Wash. March 2, 2026) (collecting cases). Surely, someone who is on no conditions at all, with a heightened liberty interest and unconditional expectation of freedom, should also receive pre-deprivation notice and an opportunity to respond before this freedom is taken away. *See, e.g., Zambrano-Vazquez v. Noem*, No. C26-122, 2026 WL 657129, at *1, 4 (W.D. Wash. March 9, 2026) (finding that arrest of petitioner whose removal proceedings had been administratively closed without reasoning or process violated due process under *Mathews* factors). Petitioner did not receive notice and a pre-deprivation hearing prior to his detention; therefore, the procedures used by Respondents show the risk of erroneous deprivation of liberty is high.

Therefore, the second *Mathews* factor weighs in favor of Petitioner.

### 3.    Government Interest and Administrative Burdens

As to the third *Mathews* factor, Petitioner argues that Respondents' interest in detaining

noncitizens is reduced where the noncitizen has lived in the United States for a long time without violating their release conditions. Dkt. No. 1 ¶ 40. Respondents argue that their interest is compelling as it goes to "effective enforcement of the immigration laws, ensuring an alien's appearance at removal proceedings, and protecting the public." Dkt. No. 4 at 8. Respondents go on to argue that the fiscal and administrative burdens that pre-deprivation hearings impose are "particularly acute" where a noncitizen shall be mandatorily detained under 1225(b). *Id.* As previously addressed, Respondents' 1225(b) arguments fail because Petitioner is detained under Section 1226(a). *See supra* III.A. Moreover, the interests Respondents assert are not threatened if a pre-deprivation hearing is required. As Petitioner argues in reply (*see* Dkt. No. 7 at 10), Respondents' argument of administrative burdens is unpersuasive, as immigration hearings are routine and the costs of them are outweighed by the risk of erroneous detention. *See Ortiz v. Hermosillo*, No. C26-384, 2026 WL 607672, at *4 (W.D. Wash. March 4, 2026) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019)).

In sum, this Court finds that all three *Mathews* factors weigh in Petitioner's favor. Therefore, his re-detention without a pre-detention hearing violated his rights under the Fifth Amendment to the United States Constitution. Because Petitioner's detention is unlawful, his immediate release is required.

**C.    Petitioner's Request for Injunctive Relief**

At the very end of his petition, without providing any briefing on the issue, Petitioner requests that the Court "permanently enjoin his re-detention during the pendency of his appeal[5] absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that he is a flight risk or a danger to the community and that no

---

[5] It is unclear to which appeal Petitioner refers. The record does not indicate the existence of any appealable orders in Petitioner's removal case.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 10

alternatives to detention would mitigate those risks." Dkt. No. 1 at 10. There are standards a moving party must meet to be granted injunctive relief, none of which Petitioner addresses. *See, e.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (providing factors a party must demonstrate to receive injunctive relief); *see generally* Dkt. No. 1. Therefore, Petitioner's request for injunctive relief is DENIED.

### IV.   CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1)   Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

    (a)   SHALL release Petitioner from detention **within twenty-four (24) hours** under appropriate conditions of release;

    (b)   SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2)   Petitioner's request for injunctive relief is DENIED.

(3)   Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 19th day of May, 2026.

Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 11